## BUCKNER ET AL. *vs.* REAL ESTATE BANK.

It is by force of the custom of merchants that bills of exchange are assignable—and the negotiability of such instruments as they existed by the law merchant, is not changed, but confirmed by our statute.

The jurisprudence regulating bills of exchange, embodies the usages of merchants in different commercial countries, and the general principles of natural law, applicable to their respective rights and duties.

One who sues upon a bill of exchange, must show title in himself.

The title in the original payee is *immediate*—but one taking by assignment, takes a derivative title not acknowledged at common law—he takes by the law merchant, by a writing called an *endorsement*.

Bills drawn in favor of one, or bearer, are assigned by delivery, and are not payable to order, but to the bearer: and are only transferable by delivery, either actual or constructive.

Where an endorsement is necessary, no particular form of words is required to pass the title—nor is it necessary that the writing should be on the back, as the word imports; it may be on the face, or even upon a separate piece of paper annexed to the bill.

A deed of assignment made by a corporation, whereby it assigned, transferred and made over all its estate, real and personal, choses in action and assets, does not transfer the legal interest in a bill of exchange, so as to enable the assignee to sue in his own name.

The word "order" in a bill of exchange has a positive, fixed meaning, and means an order endorsed on or accompanying the bill—and means nothing else.

The words "assignment" and "endorsement" are frequently used interchangeably.

Our statute of assignments makes many instruments negotiable which were not so before, but does not purport to change the law merchant as to instruments before assignable—it merely adds to their number.

In construing a statute the court looks to the former mischief, the proposed remedy, and the reasons for the change.

In a statute using a word, the meaning whereof is well known, and which has a definite sense at common law, the word will be restricted to that sense.

The words "assignor" and "assignment" in our statute, relates to bills and notes not negotiable, but payable to bearer: and the words "endorser" and "endorsement," to all other instruments made negotiable.

Buckner et al. *vs.* Real Estate Bank.

An averment in a pleading that a bill of exchange, together with all other, the property, real, and personal, choses in action and assets of one, were transferred by deed to trustees in trust, and in no other manner whatever, is an affirmative averment inconsistent with the idea that the assignment was made by endorsement on tho bill, or on a paper accompanying it.

THIS was an action of assumpsit, determined in the Pulaski circuit court, at May term, 1844, before the Hon. JOHN C. P. TOLLISON, special judge. The Bank sued Simeon Buckner, Lambert J. Reardon and Robert A. Watkins, on a bill of exchange. The defendants pleaded that since the last continuance of the suit, the Bank had, on the 2nd April, 1842, by deed of that date, assigned, transferred and delivered the bill mentioned in the declaration, to Carey A. Harris, James S. Conway, Sam C. Roane, Henry L. Biscoe, Wm. F. Moore, John Preston, jr., Anthony H. Davies, Sandford C. Faulkner, Silas Craig, John Drennen, Lorenzo N. Clarke, Robert S. Gibson, Daniel T. Witter, George Hill, and Enoch J. Smith, and prayed judgment if the plaintiff should further maintain her suit, &c. To this the plaintiff replied that she ought not to be barred, &c., because, &c., that the bill in the declaration and plea mentioned, was assigned, transferred, made over, and delivered, by her to said persons in that behalf in said plea mentioned, on the 2nd day of April, 1842, by her deed of that date, duly executed, whereby she conveyed the same with all other her estate, real and personal, choses in action, and assets to said persons in said plea mentioned as trustees, in trust for the payment of all her debts and liabilities, and in no other way or manner howsoever—concluding with a verification and prayer of judgment. To this there was a demurrer—the demurrer overruled, and the defendants saying nothing further in bar, final judgment was entered against them. The case came here by writ of error.

*Ashley & Watkins, Trapnall & Cocke,* for plaintiffs. The *trust* feature in the replication can have no weight in this argument, because if the deed itself is valid, it would undoubtedly pass the *legal* estate.

The transfer of choses in action in this State is not governed by the principles of the law merchant. If the bill sued on was assignable, it was solely by virtue of our statute of assignments. This is the great

distinguishing feature of all the decisions made by this court upon this subject. We refer more particularly to the cases of *Small vs. Strong*, and *Block vs. Walker*. Upon no other principle than that the law merchant did not prevail here, could this court have decided that the holder of a note or bill, could not in any state of case, reinvest himself with the legal interest, by striking out an endorsement.

The question now is, whether any instrument made assignable by our statute can be assigned by a separate deed or instrument. We imagine the Bank or its assignees will be the last persons to dispute this proposition. We need not go further than the case of *Conway et al.*, *ex parte* to establish it, and its application to this case.

If the assgnment is required to be *on* the paper, it would seem to be a part of it. But this court have decided, in the case of *McClain et al. vs. Onstott*, 3 *Ark. R.* 478, that the endorsement is not a part of the note.

Now, upon principle, a plaintiff who sues as assignor, or can derive his title as well through an assignment in a separate instrument or piece of paper as by endorsement—and the defendant is entitled to oyer of such an assignment, and can question its validity with the like effect as if it was endorsed.

The court of appeals in Kentucky, in the case of *Instone vs. Williamson*, 2 *Bibb* 83, decided directly that an assignment might be made upon a separate instrument so as to authorize an action in the name of the assignees: and so in *Hughes vs. Harrison*, 2 *Miller's Louisiana Rep.* 89.

*Pike & Baldwin*, for defendants. The defence is not a remarkably equitable one, or entitled to special favor at the hands of the court.

Where a bill is negotiable, if it is payable to *bearer*, it may be transferred by endorsement, *Ch. on Bills*, ch. 5, *p.* 178–'9. (8 Edition 1833.) *Id.* ch. 6, *p.* 218–'19, 262. *Bayley on Bills*, ch. 1, *sec.* 19, *p.* 30, 31. (5 *Edition* 1830.) *Id.* ch. 9, *p.* 388. 3 *Kent p.* 78. (4 *Edition.*) *Story on Bills*, 221. *Bank of England vs. Newman*, 1 *Lord Raym.* 442. *Brush vs. Reeves, adm'r.* 3 *J. R.* 437.

If a bill be originally payable to a person or his order, then it is properly transferable by endorsement, because in no other way will

the transfer convey the legal title to the holder.   *Story on Bills, sec.* 201.   In *Gibson & Johnson vs. Minch & Fector,* in the House of Lords. 1 *H. Bla.* 569, this point is fully considered.   See *Ch. on Bills,* 252. *Bayley on Bills,* 120, 121.   The same doctrine was held in the case of a promissory note, payable to the payee or order, in *Pease vs. Hirst,* 10 *B. & C.* 122.   In *Hopkirk vs. Page,* it was said by MARSHALL, C. J., that bills of exchange are transferable, not by force of any statute, but of the custom of merchants.   Their transfer is regulated by usage, and that usage by convenience—a transfer of a large number of bonds, bills, notes and accounts by deed, would be anti-commercial; but such an instrument might properly be considered as transferring the equitable interest, the right to receive the money, but not a negotiation of the bill, so as to authorize the holder to sue in his own name. The principle of the decision is sustained also, by *Waters vs. Millar,* 1 *Dall.* 360.   *Barrier vs. Nairac,* 2 *Dall.* 249.   *Douglass vs. Wilkison,* 6 *Wend.* 639.   *Story on Bills,* 25.

Our Revised Statutes change no portion of this law, but expressly re-affirms it.   By it "all bonds, bills, agreements and contracts in writing, for the payment of money or property, or for both money and property, shall be assignable."   This makes many instruments negotiable which were not so by the law merchant.   This does not change the law as to instruments already assignable, but merely adds to their number by including a new class of instruments.   *Hagoon's case,* 3 *Co.* 7.   *Stowell vs. Zouch, Plowd.* 365.   1 *P· Wm's.* 262.   *Dwarris* 712.   2 *Just.* 200.   1 *Just.* 111, 113.   *Dwarris* 637, 640.

*By the Court,* LACY, J.   The question to be decided here, arises upon the demurrer to the plaintiff's replication, which is an answer to the defendant's plea, *puis darrien continuance.*   The replication avers that the bill of exchange upon which the suit is brought, was assigned and transferred upon the 2nd of April, 1842, by deed of that date duly executed, whereby the Real Estate Bank of the State of Arkansas conveyed the same with all her estates, real and personal, choses in action and assets to certain trustees therein mentioned for the payment of all her debts and liabilities.   This assignment is shown by the plea to have been made subsequent to the institution of the suit,

Buckner et al. *vs.* Real Estate Bank.

and the enquiry now is: does the deed of assignment pass the legal estate in such manner as to divest the corporation of her right of action, and convey the same to the trustees?

It is by force of the custom of merchants that a bill of exchange is assignable. Our statute only confirms the negotiability of such instruments as it existed by the *lex mercatoria.* It changes no principle of the law merchant in regard to the manner of assignments, but expressly recognizes them. The jurisprudence which regulates bills of exchange is founded upon and embodies the usages of merchants in different commercial countries, and the general principle of natural law, as applied to their respective rights, duties and obligations. *Story on Bills of Exchange*, 25. A bill payable to a person or his order, is properly transferable by endorsement. " Properly," says Justice STORY, "because in no other way will the transfer convey the legal title to the holder, so that he can at law hold the other parties liable to him *ex delicta*, whatever may be his remedy in equity." "If there be an assignment without endorsement, the holder will thereby acquire the rights only that he would acquire upon an assignment of a bill not negotiable ." *Story Bill Ex. sec.* 201. A plaintiff who sues upon a bill of exchange must show title in the same manner as every other plaintiff. The title of an original payee is *immediate* and apparent upon the face of the bill. He who takes by assignment, takes a derivative title which the common law does not acknowledge. He takes title by the *lex mercatoria*, and the custom in such cases directs that the manner of assignment should be made by a writing called an *endorsement*, purporting that the contents of the bill are to be paid to a third person. And in respect to bills drawn in favor of a person or bearer, the assignment is to be made by delivery. In such a case the bill is not negotiable or payable to order, but to the person or bearer; it is then transferable only by delivery. Either actual or constructive delivery is indispensable to constitute a legal title to such a bill. In cases where an endorsement is necessary to pass the bill, no particular form of words are required. The word endorsement, in its strict sense, imports a writing upon the back of the bill, but it is now settled that this is not essentially necessary to pass the bill. On the contrary, it would be a good endorsement if it were made upon

the face of the bill, or in another paper annexed thereto, (which is called in France *Allonge*,) and which is sometimes necessary, where many successive endorsements are to be made. *Chitty on Bills*, ch. 5, *p*. 147. In *Hopkirk vs. Page*, 2 *Brock.* 41. Chief Justice MARSHALL held "that the legal interest in a bill of exchange, according to the law merchant, could not be transferred otherwise than by an endorsement, and the endorsement must be upon the bill, or, at least, must accompany it; and that a general assignment by deed of all the debts of an individual cannot be considered as a negotiation of a bill upon mercantile usage, so as to authorize the holder to sue in his own name." The doctrine here laid down conclusively shows that the deed of assignment we are here considering, does not transfer the legal interest in the bill to the trustees, in such manner as to authorize them to sue in their own names. In other words, that it is not a good endorsement or assignment. *Chitty on Bills*, ch. 5, 178, 179; ch. 6, 218, 219, 252. *Kent Com.* 4 *Ed. p.* 78. *Story on Bills*, 221. *Gibson & Johnson vs. Merrit & Fenwo*, 1 *H. Bla.* 562. *Waters vs. Miller*, 1 *Dall.* 269. *Douglass vs. Wilkison*, 6 *Wend.* 639.

The authorities already cited, prove that by the law merchant, there is a positive and fixed meaning to the word "order" in a bill of exchange, and that it means, generally, an order endorsed on the bill, and can mean nothing else: and that the words "assignment" and "endorsement" are frequently used interchangeably by all the writers on the subject. By the first section of the chapter of assignment it is provided that "all bonds, bills, notes, agreements and contracts in writing for the payment of money, or property, or for both money and property, shall be assignable." This makes many instruments negotiable which were not so by the common law. This act does not purport or intend to change the law merchant as to the instruments before assignable. But merely adds to their number by including a class of agreements which were not before negotiable. This undoubtedly would be the true meaning of the act, if it contained no other provisions bearing upon the subject, for in construing it, we would be bound to look to the former mischief, the proposed remedy and the reasons for the change. *Hayden's case*, 3 *Coke* 7. If a statute makes use of a word, the meaning of which is well known, and has a definite

sense at the common law, the word shall be expounded and restricted to that sense. 2 *Mod.* 43. *Dwarris on Stat.* 637, 640, 712. 2 *Ins.* 200. 1 *Ins.* 211, 215. By reference to the 4th section it is perceived, that the assignee in bringing his suit on any instrument of writing made assignable, shall not be required to prove the assignment, unless the defendant annex to his plea an affidavit stating that he believes that the assignment on such instrument was forged. Section 5 speaks of assignments on such assigned paper, and section 7 speaks of blank assignments; section 9 uses the words "endorsers" and "assignors," but this must be understood in reference to the true meanings of assignment. The words "assignor" and "assignment" relate to bills and notes not negotiable, but payable to bearer; and the words "endorser" and "endorsement," to all other instruments made negotiable. By *sections* 7 and 8 of the chapter upon bills of exchange, no damages are given, except upon such as are payable to order or bearer; and the 10th section gives an action against the drawer, acceptor and endorser. These several sections clearly show that the endorsement must be made upon the instrument assigned, or on some paper accompanying it at the time the bill passes.

In the present case the replication avers, that the bill of exchange, together with all the other property, real, as well as personal, and assets of the Bank, was transferred by deed to certain trustees for the payment of the debts of the Bank. This is an affirmative averment, and is wholly inconsistent with the idea that the assignment was made by endorsement upon the bill, or by any other instrument of writing attached to it. If the facts alleged be true, and the demurrer admits them to be so, it inevitably follows that the bill was not endorsed or assigned in the manner required by the law merchant and statute. It would have been impossible that such a deed as the one averred to be executed, could have been made upon the bill. The plea avers that the assignment was made after suit brought by the Bank, and the replication equally contradicts the supposition that the deed of assignment accompanied the bill, or was attached to it. It may be said that the replication does not exclude the hypothesis that the bill might not have been assigned by some other instrument (other than the deed) accompanying it. We think otherwise. It avers affirmatively that

it passed by the deed of assignment, and "in no other manner what-soever." This allegation expressly negatives the intendment that it might have been endorsed or assigned by some other instrument which was attached to the bill. The affirmative averment in this instance is equivalent to an express negative, and to us is conclusive upon the point. "Nothing," remarks Chief Justice MASHALL, "can be more anti-commercial than the idea of transferring negotiable paper by a deed conveying a vast number of bills, bonds, notes and accounts." Such an instrument may be very properly considered as conveying the equitable interest and the right to receive the money, but cannot be regarded as the negotiation of a bill upon mercantile principles, so as to authorize the holder to sue in his own name. We, therefore, regard the replication as a sufficient answer to the plea, and conse-quently, the demurrer to it was properly overruled. The judgment is therefore affirmed; and as this case was submitted before there was a seizure pronounced against the corporation of the Real Estate Bank of the State of Arkansas, the judgment here given is ordered to be entered as of the 18th day of July, of this term.

RINGO, C. J., *dissenting.* To an action instituted by the Bank against the plaintiffs in error as the drawer and endorsers of a bill of exchange, the latter pleaded jointly *puis darrien continuance,* "that the said plaintiff ought not further to maintain the action against them, because they say that since the commencement of this suit and since," &c., "to wit: on the 2nd day of April, A. D. 1842, at the county aforesaid, the said *plaintiffs assigned, transferred and made over* unto James S. Conway," &c., "the said bill of exchange in writing men-tioned in said declaration, for value received, and then and there de-livered the same to them, who then and there acquired thereby, and still have the vested right to sue for and implead the said defendants of the said bill of exchange, and whatever of damages, interest, cost and charges that may have accrued thereon, without this, that the said plaintiff hath any present legal right or title in or to the said bill of exchange," &c. The Bank demurred to this plea, and the circuit court held it insufficient in law to bar the action, and thereupon gave final judgment in favor of the Bank, which was brought before this

court for revision, on a writ of error sued out by the present plaintiffs.

Upon the hearing of the case thus brought before it, this court adjudged the plea to be a good bar to the Bank's further maintaining this action, reversed the judgment of the circuit court and remanded the case with instructions to that court to overrule said demurrer, and proceed to adjudicate further in the cause according to law and not inconsistent with said opinion.

Upon the case being thus returned to the circuit court, the Bank replied to said plea that she ought not to be barred, &c., because "the said bill of exchange in said plea and declaratian mentioned, was *assigned, transferred* and made over, by her to said persons in that behalf in said plea mentioned, on said second day of April, A. D. 1842, *by her deed of that date duly executed, whereby she conveyed the same,* with all other her estate, real and personal, choses in action and assets, to said persons in said plea mentioned, as trustees, in trust for the payment of all her debts and liabilities and in no other way or manner howsoever," concluding with a verification. The plaintiffs in error demurred to the replication and assigned specially as causes thereof, in substance, 1st, That the replication confesses the assignment, making over and transfer, and sets up in avoidance thereof that the same was made in trust; whereas the legal estate or right to sue passes to an assignee in trust, to the same extent as if no trust were coupled with the assignment: and 2nd, The replication is double, and not issuable. The Bank joined in the demurrer, and thereupon the court adjudged the replication sufficient in law to avoid the plea, and enable the Bank to maintain this action, notwithstanding her assignment of the bill in question, and gave final judgment in her favor for the full damages accrued therein, with interest and costs of suit against the defendants below; to reverse which, they have again brought the case before this court by writ of error.

The facts thus pleaded seem to me to present the isolated question, whether a bill of exchange can be legally transferred by deed, or endorsement under seal? If it can be so transferred, the replication is unquestionably bad. If it cannot, it is sufficient. That a bill of exchange was not, by the law merchant, transferable by deed or endorsement under seal, is conceded, and has not, I think, ever been

doubted.    And this, as I apprehend, is the principle adjudged by
MARSHALL, C. J. in the case of *Hopkirk vs. Page*, 2 *Brock.* 41, and
indeed most of the cases and authorities cited and relied upon by the
defendant and the court.    But if I correctly understand the principle
now adjudged by the court in this case, it extends further, and deter-
mines that the law merchant, as regards the negotiation and transfer
of bills of exchange, is in no wise affected by our statute concerning
assignments, they not being within the purview of its provisions.    If
this exposition of the statute be the true one, the replication is in my
opinion sufficient.    But I do not so understand the provisions of the
statute, the first and second sections of which declare that " all bonds,
*bills*, notes, agreements and contracts in writing for the payment of
money or property, or for both money and property, shall be assign-
able," and that "the assignee of any such instrument as specified in
the first section of this act, may sue for the same in his own name as
assignee thereof in the same manner that the original obligee might
or could do."    The language of the first section here quoted is surely
broad enough to include bills of exchange, and unless something could
be perceived in other provisions of the statute, or in the nature of
bills of exchange, indicating clearly that it was not designed to in-
clude them, they cannot by any legal or just rule of interpretation be
considered as excluded therefrom.    Certainly the terms "all bills,"
whether used in legal or in common parlance, are comprehensive
enough to include bills of exchange.    If so, then upon what ground
can they justly be considered without the purview and operation of
these statutory provisions?    The reason assigned by the court is, that
they were not within the mischief, which it was the design of this
statute to remedy.    And this conclusion appears to be deduced from
the consideration that they were previously transferable, and could be
sued on in the name of the assignee or endorsee, by virtue of the law
merchant.    This is true.    But was the statute designed solely to au-
thorize the transfer or assignment of choses in action not assignable at
common law, and suit to be brought thereon in the name of the as-
signee?    I do not so understand it.    Because it not only provides for
the assignment of choses in action not assignable at common law, but
admits discounts and offsets against the assignee, which were excluded

by the law merchant, and dispenses with proof of the assignment, (except it be denied by plea supported by affidavit, stating that the assignment is forged) which the law merchant required. Such is the effect of the provisions contained in the third and fourth sections of the same statute: and their application to actions founded on bills of exchange has not, that I am aware of, ever been questioned. Indeed it has been uniformly admitted that, under the provisions of this statute, any defence may be made against the assignee, which, without the transfer, could have been made against the payee or obligee, when the action is founded on a bill of exchange as well as upon any other legal obligation. Can there exist a reasonable doubt that all such rights of defence attach upon bills of exchange and adhere to them, in the hand of any endorsee or assignee in precisely the same manner and to the same extent, that they do to other choses made assignable by this statute? I presume not. Yet no such defence was ever recognized by the law merchant. They rest solely upon the authority of this statute. Is there any thing in these sections indicating that their provisions were intended to embrace mercantile paper or apply to actions founded on bills of exchange, and modify the law merchant in this respect, but leaving it as to the mode of assignment by the provisions of the preceding sections? I think not. They contain the following provisions, viz: *Sec.* 3. "Nothing contained in this act shall change the nature of the defence, or prevent the allowance of discounts or offsets, either in law or equity, that any defendant may have against the original assignor, previous to the assignment, or against the plaintiff or assignee after the assignment." *Sec.* 4. "The assignee of any instrument in writing made assignable by law, on bringing suit on any such assigned paper, shall not be required to prove said assignment, unless the defendant shall annex to his plea an affidavit denying such assignment, and stating in such affidavit that he verily believes that one or more of the assignments in such instrument of writing was forged." The language of these is certainly not more comprehensive than that used in the two preceding sections above quoted; and I can perceive no good reason why their provisions shall be held to apply to mercantile paper any more than those of the former: consequently, upon a careful and deliberate consideration of all the statutory

provisions relating to the subject, I have been lead to the conclusion that bills of exchange are within the purview and operation of the several sections of the statute above quoted, and may well be transferred by the payee or party in whom the legal interest therein is vested, by any appropriate instrument in writing, sealed or unsealed, either endorsed thereon, or on a paper thereto attached, or separate therefrom; the mode of transfer, under the provisions of the statute not being restricted as it was by the law merchant, to a simple *parol* endorsement on the bill or some paper actually attached to it, or passing at the same time with it; and that the legal liabilities of the parties to a bill of exchange, as well as those to any other instrument for the payment of money alone, the assignment of which is authorized by law, may become fixed and established, and be enforced according to the provisions of the ninth section of the same statute, which enacts that "all endorsers or assignors of any instrument in writing assignable by law for the payment of money alone, receiving due notice of the non-payment or protest of any such endorsed or assigned instrument in writing, shall be equally liable with the original maker, obligor or payer of such instrument, and may be sued for the same at the same time with the maker, obligee or payee thereof, or may be sued separately." Besides, it is a fact well worthy of consideration that authority for the prosecution of this very action, in the manner in which it is prosecuted jointly against the maker, payee and endorser of the bill, is derived from the provisions of the 9th section of the statute here quoted, or the accordant provisions of the 5th section of another act, approved March 3rd, 1838, Acts 1837, *p.* 136, which former statute, if I correctly understand the opinion of the court, is held not to embrace within its purview, bills of exchange, which are therefore in all respects governed by the law merchant as modified by the statute, exclusively relating to bills of exchange, approved February 28th, 1838, *Rev. Stat. Ark. ch.* 20, and the statutes in which they are expressly mentioned. To this interpretation of the statutory provisions under consideration I cannot assent, because it appears to my understanding perfectly manifest not only that the rights of set-off, discount, and of any subsisting equity between the original parties to any chose in action assignable by law are thereby given or preserved to such

parties against the assignee, as well when the cause of action arises upon a bill of exchange as upon any instrument not assignable at common law, or by the law merchant, which, as regards bills of exchange, is an innovation upon the latter law. I am therefore unable to perceive any legal or rational ground upon which they can be considered as excepted out of the provisions of the first and second sections of the statute above quoted: besides which, it must, I think, appear clear to all who read the statute, that the legislature, in using the terms "endorsers" and "endorsed" in the ninth section, have unquestionably indicated the intention of putting "endorsers" and "assignors," and instruments "assigned" and instruments "endorsed," upon grounds in every respect alike, as well in regard to the rights of the parties as the means of enforcing them; and thus, not only in this, but in many other respects, so change the law as to establish between bills of exchange and such other rights of action as are thereby made assignable, a certain degree of equality which the law did not previously allow. And this change in the law appears to me to be not only agreeable to the common practices of the community, but, from the ordinary course of business therein, to have been absolutely essential to its wants. For it is well known to every body that a very large portion of the credits given in this statute, and indeed in the United States, are evidenced by bonds and promissory notes, perhaps, even more than by bills of exchange, and that the assignment of such bonds and notes occupy a more prominent place in the business transactions of the community; and that by means thereof, property of great value is constantly transferred, and the legal interest therein conveyed from the assignor to the assignee, and hence an adjustment of the rights of all the parties affected by this mode of transferring property, or, more correctly speaking, the rights of property, has become an important object of legislation; and the enactments in regard thereto are both interesting and important, because the legal title to much of the general wealth depends upon their provisions, rests upon their authority, and is held by virtue of the rights thereby created, and is subject to the conditions thereby prescribed. But it will be perceived that none of these enactments define the mode of transfer by which such rights shall be assigned. They declare the right to assign and define the

Buckner et al. *vs.* Real Estate Bank.

respective obligations and rights of the assignor and assignee, and other parties to the instrument assigned, thus prescribing the effect of the assignment when made, but entirely omitting to prescribe whether it shall be by parol or under seal, by endorsement on the instrument assigned, or by a separate instrument, and therefore I consider the law as designed to authorize the transfer of the legal interest in such rights of action by any writing or instrument indicating with sufficient legal certainty a design to make the transfer, and the instrument or thing intended to be transferred, and that the legal interest in such choses in action may well be transferred by any such instrument in writing, as in law is sufficient to pass the legal interest in such property as may be recovered, upon the instrument assigned. This interpretation of the statute agrees in this particular with that of the court of Appeals of Kentucky, as to the effect of a similar statute of that State. In both, the right to assign is general and unqualified, and any assignment, sufficient to pass any interest whatever in the thing assigned, the act being legal and in every way consistent with the design of the law, must of necessity pass the legal interest therein. And if it has not this effect, it is no assignment, and no interest or estate whatever in the chose in action is parted with or acquired thereby. In considering this statute no one can overlook the fact, that the legislature, in authorizing the transfer of this species of right or property, constantly and prominently make use of the terms "assignable" and "assignment," assignor" and "assignee," instead of the terms "endorse" and "endorsement," "endorser" and "endorsee," thus clearly indicating the design of the law to be to make the right of transfer, in regard to this species of property, as extensive and unrestricted, as it exists in regard to property of any other kind; and to leave the mode of transfer to be determined by the principles and usages of the common law, instead of those peculiar to the mercantile law; and upon this principle I understand this court decided the cases of *Block vs. Walker,* 2 *Ark. R.* 4, *and Purdy vs. Brown & Taylor,* 4 *Ark. R.* 535. And therefore I hold the principle asserted by the court of Appeals of Kentucky, in its opinion pronounced in the case of *Instone vs. Williamson et al.* 2 *Bibb* 83, to be in every view applicable to the provisions of the statute under consideration.

Such I consider to be the true interpretation of our statute of assignments. Is its operation, in regard to the assignment or transfer of such paper, affected by the statute, approved 16th December, 1838, Acts 1838, *p.* 10, which enacts "that from and after the passage of this act, all bills of exchange or promissory notes made, endorsed or accepted by any corporation, person or persons, for the payment of any sum of money therein mentioned, for value received, payable to any corporation, person or persons, or order, or bearer, at any bank, or the branch of any bank, in this State, or any bill or promissory note, that may be discounted or negotiated therein, shall be negotiable and liable to be sued upon and governed in all respects by the same rules as negotiable bills of exchange, and governed by "an act to regulate bills of exchange," approved February the twenty-eighth, eighteen hundred and thirty-eight, excepting thereform so much of said act as relates to the rate of interest, and damages as therein specified, which shall not be construed to apply to promissory notes." Sec. 2 further enacts "that all laws and parts of laws heretofore passed by the General Assembly of this State relating to set-off, or to the allowance of discounts or offsets, either in law or equity, as against the maker, endorser, acceptor, holder, or owner of any bill or promissory note, shall not be applicable to any of the provisions of this act, or to the said act to regulate bills of exchange to which this refers, when any of the said bills, as therein specified, shall be made payable at any bank, or the branch of any bank, in this State, or that may be discounted or negotiated therein; and all laws that conflict or are inconsistent therewith, be and the same are hereby repealed."

The principal design of this statute was to favor the banks in this State by applying to certain promissory notes, the rules of law applicable to bills of exchange, and relieving the holder of such bills of exchange and promissory notes, as should be made payable at, or be discounted or negotiated by either bank, from the embarrassment, delay and loss incident to the defence, by way of discount or set-off, then allowed by law to the defendant. For which purpose, such defence, either at law or in equity, is by the second section of this statute, in all actions upon such paper, denied. But surely the right of transfer is neither restricted nor enlarged by this act. Such was not its de-

sign, nor is this a consequence of applying to certain promissory notes, the rules and principles of law by which bills of exchange were then, and still are governed; which is the whole object and effect of the first section of the statute. They were then subject to the statute law of assignments, and continued subject to it without any change in the mode of transfer authorized by that statute; nor does this latter statute abrogate any legal or equitable defence allowed by the former, in actions upon bills of exchange or promissory notes, except that of discount and set-off, which, with the reference therein made to the statute regulating bills of exchange, and the exception as to damages on promissory notes, proves to my understanding, clearly, that the law merchant as qualified by the changes therein made by legislation, prescribes the principles and rules thereby made to regulate and govern such contracts, subject only to the exceptions therein specified and stated above. It is furthermore manifest, from the second section of this statute, that the legislature understood the provisions of the statute of assignments as embracing bills of exchange. For it is upon this assumption alone that their exemption from the defence by way of discount could be necessary or operative; such defence being inadmissible under the law merchant, and authorized alone by that statute. Thereupon the replication is, in my opinion, insufficient, and the court below erred in overruling the demurrer thereto. And for this error the judgment, in my opinion, ought to be reversed.